[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 328 
This is an action for damages sustained by the plaintiff Pearl Nickson, and as she alleges in the complaint, through the negligence of the defendants Oregon-American Lumber Company, Wadhams Co., Inc., S.J. Domnisse and Carl Davidson. The *Page 329 
plaintiff alleges the corporate capacity of the Oregon-American Lumber Company and Wadhams Co.; that defendant Davidson was the foreman, superintendent and agent of the Oregon-American Lumber Company, and that the defendant Domnisse was a salesman and agent of Wadhams Co., Inc. It is alleged that on the twenty-eighth day of April, 1925, and for a long time prior thereto, the Oregon-American Lumber Company was the owner and operator of a railroad from what is known as Keasey, Oregon, to its various camps and particularly a section of railroad running from Keasey, Oregon, to the Inman-Poulsen Lumber Company's camp.
The complaint also alleges:
 "VI.
"That on said 28th day of April, 1925, this plaintiff, who had been in the camp of the Inman-Poulsen Lumber Company, was leaving said camp to come to Portland, Oregon, and took passage upon a speeder belonging to the Inman-Poulsen Lumber Company, which speeder was bound for Keasey, Oregon. That said speeder proceeded toward said town of Keasey on the Oregon-American railroad track and when said speeder arrived at the Oregon-American Lumber Co. camp on said railroad, Mr. Winkler, the operator of said speeder and who was in the employ of the Inman-Poulsen Lumber Co. notified the Keasey operator, who was in the employ of the Oregon-American Lumber Co. and who was the dispatcher of trains over said Oregon-American Lumber Co. tracks; and said operator of said Oregon-American Lumber Co. thereupon advised, directed and instructed said operator of the Inman-Poulsen speeder that the track was clear from the Oregon-American track to Keasey, and for him to proceed with said speeder. That thereupon said speeder, upon which speeder this plaintiff was riding, proceeded from said Oregon-American camp toward Keasey, when said speeder *Page 330 
of said Inman-Poulsen Lumber Co. came upon a gasoline speeder belonging to the Oregon-American Lumber Co., which was then and there being operated upon said tracks for the benefit of and at the orders and instructions of said Oregon-American Lumber Company.
 "VII.
"That said speeder of said Oregon-American Lumber Company was being operated by Carl Davidson, the defendant herein, who was then and there and at said time an employee of and the foreman and superintendent of said Oregon-American Lumber Company; and thereupon the said Carl Davidson, defendant herein, for himself and as an employee of said Oregon-American Lumber Company, signalled and high-balled the speeder of said Inman-Poulsen Lumber Company to stop, which said speeder thereupon did. That thereupon the defendant, Carl Davidson, advised and explained to the operator of the speeder of the Inman-Poulsen Lumber Company that he had forgotten his turntable, and he thereupon then and there requested the operator of the Inman-Poulsen speeder to turn back and get his said turntable, and thereupon the operator of the Inman-Poulsen speeder, with the plaintiff aboard, turned back over said track, with the said Mr. Davidson, to secure said turntable, and thereupon the Inman-Poulsen speeder turned back, secured said turntable and again started toward the town of Keasey.
 "VIII.
"That thereupon, and while going to said town of Keasey, with the said Carl Davidson aboard said Inman-Poulsen speeder, the said defendant, S.J. Domnisse carelessly and negligently operated his speeder in the direction from which the Inman-Poulsen speeder was proceeding and carelessly and negligently ran into and upon the speeder of the Inman-Poulsen Lumber Company, injuring this plaintiff as hereinafter more fully set forth. *Page 331 
 "IX.
"That the Oregon-American Lumber Company herein was careless and negligent in the following respects, to wit:
"That the Oregon-American Lumber Company was careless and negligent, in that the said Carl Davidson, its agent, foreman and superintendent, carelessly and negligently allowed and permitted the said S.J. Domnisse, the operator of the speeder of the Oregon-American Lumber Co. to proceed toward the speeder of the Inman-Poulsen Lumber Company, and carelessly and negligently allowed its said speeder to run into and upon the speeder of the said Inman-Poulsen Lumber Company.
"That the Oregon-American Lumber Company was careless and negligent, in that it ordered and directed, through its officers and agents, the said S.J. Domnisse and Carl Davidson to operate its speeder upon the track toward the Inman-Poulsen Lumber Company's speeder, without advising the plaintiff or the operator of the Inman-Poulsen Lumber Company speeder.
 "X.
"That the said Wadhams Co., a corporation, was negligent in the following respects, to-wit:
"That its agent and employee, S.J. Domnisse, carelessly and negligently operated said speeder toward the speeder of the Inman-Poulsen Lumber Company, when he knew, or ought to have known, that the Inman-Poulsen speeder, with this plaintiff aboard, would be coming in the direction of Keasey, and that it would collide with the speeder which he was operating, if he operated it in the direction from which the Inman-Poulsen speeder was coming.
"That the said S.J. Domnisse was careless and negligent in that he ran said speeder at a careless and reckless rate of speed, to-wit, 25 miles an hour, and was unable to operate said speeder, was incompetent and did not understand the operation of said speeder, and that when he saw the speeder of the *Page 332 
Inman-Poulsen Lumber Company he failed to brake said speeder or take any precautions whatsoever to stop said speeder.
"That the said Wadhams Co. were careless and negligent, in that its said officer and agent, S.J. Domnisse, did not keep a proper look-out while operating said speeder.
 "XI.
"That the said Carl Davidson was negligent, in that he allowed, permitted, instructed and directed the said S.J. Domnisse to operate said speeder in the direction from which the Inman-Poulsen Speeder was coming, when he knew that the said Inman-Poulsen speeder would be proceeding toward Keasey, and knew that there would be a collision if the operator of the Oregon-American Lumber Company speeder proceeded toward the direction from which the Inman-Poulsen Lumber Company speeder was coming.
"That the said Carl Davidson was guilty of negligence in not using ordinary care for the clearance of said track for the Inman-Poulsen speeder, well knowing that said Inman-Poulsen speeder would be proceeding toward Keasey as soon as it secured a turntable.
 "XII.
"That during all the times herein mentioned the said S.J. Domnisse was a salesman, agent and employee of Wadhams Co., and was engaged in the business of said Wadhams Co., being engaged in the selling of goods for said Wadhams Co. in and about Keasey, the Oregon-American Lumber Company, and the Inman-Poulsen Lumber Company.
 "XIII.
"That during all the times herein mentioned the said Carl Davidson was in the employ of the said Oregon-American Lumber Co. and was an employee and agent of said company and engaged in carrying *Page 333 
out the purposes and objects of his employer's business.
 "XIV.
"That during all the times herein mentioned the plaintiff was the wife of D. Nixon. That said D. Nixon was at all the times herein mentioned an employee of the Inman-Poulsen Lumber Co. That his said wife, the plaintiff herein, was working in and about the camp of the said Inman-Poulsen Lumber Company, and that ingress and egress to said Inman-Poulsen Lumber Company is secured by means of the speeders of said Inman-Poulsen Lumber Company and over the tracks of said Oregon-American Lumber Company, all of which these defendants well knew, or ought to have known.
 "XV.
"That said speeder of the Inman-Poulsen Lumber Company was given permission to pass over the track of said Oregon-American Lumber Company and is entitled to pass over said track.
 "XVI.
"That as the proximate result of the carelessness and negligence of the defendants and each of them, this plaintiff, when said speeders came together, was injured, in that her right leg and right ankle were broken and the bones thereof were badly crushed and splintered, and her ankle was sprained and the ligaments were torn and twisted, and plaintiff's entire right ankle was mashed and injured; and this plaintiff was bruised in and about the body and this plaintiff has suffered and will suffer great pain as a result of the carelessness and negligence of the defendants and each of them, and has suffered and will suffer a permanent injury to her right limb and ankle and has been disabled from carrying on her usual work of housewife, and other duties, and has lost, in time, the sum of $1,000.00 as a result thereof, and has incurred and paid medical bills and hospital *Page 334 
expenses in the sum of $650.00, and has been damaged in general damages, in the sum of $7,500.00."
Defendant Oregon-American Lumber Company answered, denying the whole of paragraphs 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 of the complaint, except that the defendant admitted that Davidson was at all times mentioned in the complaint an employee of the defendant Oregon-American Lumber Company as purchasing agent for said company, and for a further and separate answer and defense to plaintiff's complaint the defendant Oregon-American Lumber Company, hereinafter called O.A.L. Company, after alleging its corporate capacity and right to do business in Oregon, continued as follows:
"That the said defendant, Oregon-American Lumber Company, is engaged in the operation of a sawmill at Vernonia, Oregon, and a logging camp in Clatsop County, Oregon, and in connection with said logging camp and sawmill said defendant has constructed and does operate a logging railroad from its said camp in Clatsop County to Keasey, Oregon; that the Inman-Poulsen Lumber Company is likewise engaged in the operation of a logging camp in the vicinity of the logging camp of this defendant, Oregon-American Lumber Company, in Clatsop County, Oregon, and has also constructed and operates a logging railroad from its camp to a connection with the logging railroad of the defendant, Oregon-American Lumber Company, and that by mutual agreement between the said Oregon-American Lumber Company and Inman-Poulsen Lumber Company, said Oregon-American Lumber Company has a right to operate its logging trains over the logging railroad of the Inman-Poulsen Lumber Company and the said Inman-Poulsen Lumber Company has a right to operate its logging trains over the logging railroad of the Oregon-American Lumber Company, both of said rights are without charge and without unnecessary *Page 335 
inconvenience to the owner of said line; that neither said Inman-Poulsen Lumber Company nor said Oregon-American Lumber Company is a common carrier of freight or passengers over said logging railroads and said logging railroads are maintained and operated solely for the use and benefit of said lumber companies, and for the purpose of enabling said companies to transport logs from their respective logging camps to their respective mills for the purpose of manufacturing same into lumber and for no other purpose.
"That the accident referred to in plaintiff's complaint occurred on the tracks of the Oregon-American Lumber Company which were jointly used by the said Oregon-American Lumber Company and the Inman-Poulsen Lumber Company, and between the camp of the Oregon-American Lumber Company and Keasey, Oregon; that said defendant, Carl Davidson, had with the gasoline speeder of the Oregon-American Lumber Company from the camp of said company, come to a point on said line where the vision was clear and where it was safe for him to stop and await the arrival of the speeder of the Inman-Poulsen Lumber Company, which was following the Oregon-American Lumber Company speeder and that after the arrival of said Inman-Poulsen Company speeder at said point, and for the purpose of securing a turntable of the Oregon-American Lumber Company, by mutual agreement between the operator of the speeder of the Inman-Poulsen Company and the said Carl Davidson, the said Carl Davidson and the operator of said speeder of the Inman-Poulsen Lumber Company, proceeded on the Inman-Poulsen speeder back to the point where said turntable had been left, leaving the speeder of the Oregon-American Lumber Company at the point of safety where said two speeders had met; that thereupon, after securing said turntable, the operator of said Inman-Poulsen speeder proceeded with said speeder, and the said defendant, Carl Davidson, to return to the point where the Oregon-American speeder had been left; *Page 336 
that while proceeding in said direction and before arriving at said point where said speeder had been left, the speeder of the Inman-Poulsen Lumber Company met the speeder of the Oregon-American Lumber Company, which was at said time being operated by the defendant, S.J. Domnisse; that the operation of said speeder by the said Domnisse was without any authority or order on the part of this defendant, Oregon-American Lumber Company, or of the said Davidson; that the speeder of the Oregon-American Lumber Company was proceeding in a very slow and careful manner when it collided with the speeder of the Inman-Poulsen Lumber Company; that upon said speeder of the Inman-Poulsen Company at that time, together with the operator thereof and the defendant Carl Davidson, was the plaintiff, and that upon said speeders coming together, although the speed thereof was not sufficient to injure or damage the said speeders in any regard, the said plaintiff, without any reason therefor, carelessly and negligently jumped from said speeder of the Inman-Poulsen Lumber Company, and any injuries which she received were occasioned by the negligent and careless jumping of said plaintiff from said speeder.
"That at the time of said accident the said defendant S.J. Domnissee was not in the employ of the defendant, Oregon-American Lumber Company, or of the said Carl Davidson, and his act in operating said speeder was without any order, direction or authority on the part of said defendant, Oregon-American Lumber Company, or of the defendant, Carl Davidson, and without the knowledge of either of said defendants.
"That at the time of said accident the plaintiff herein was riding upon the speeder of the Inman-Poulsen Lumber Company for her own convenience and purpose and not upon the business of the said Inman-Poulsen Lumber Company or of the Oregon-American Lumber Company, but that said plaintiff had come upon said premises at her own solicitation with the full knowledge of the fact that said logging *Page 337 
railroads were not common carriers of passengers, were used solely for the purpose of carrying the logs of the Inman-Poulsen Lumber Company and the Oregon-American Lumber Company, and in going upon said line she did so at her own risk and without invitation on the part of either of said companies; that any injuries to said plaintiff occurred through no act of negligence or wanton or wilful injury on the part of said defendant, Oregon-American Lumber Company, or the said defendant, Carl Davidson."
Davidson answered, substantially denying the alleged negligence so far as he was concerned, and otherwise set up practically the same defense as was alleged by the O.A.L. Company.
Domnisse answered, denying any negligence on his part, and otherwise set up substantially the same defense as was contained in the further and separate answer of the O.A.L. Company.
Wadhams Co., Inc., answered, but a nonsuit was very properly granted as to them and they are not involved in this appeal. No further consideration of the case, so far as they are concerned, is necessary.
The new matter of the various answers having been put in issue by appropriate denials, the case was tried to a jury, who returned a verdict against the O.A.L. Company and Carl Davidson in the sum of $4,000 and a verdict of not guilty as to the defendant S.J. Domnisse, and from a judgment on said verdict, the defendant O.A.L. Company and Davidson appeal. AFFIRMED.
The testimony in this case covers a great deal of ground, but the salient facts may be stated as follows:
Keasey is a railroad station on what is generally designated in the testimony as the S.P. S. railroad, which extends from that place to the town of Linnton in Multnomah County. The O.A.L. Company have constructed a logging road from Keasey in a southwesterly direction some six or seven miles to their logging camp. This road is extended by the Inman-Poulsen Lumber Company for a distance of something over a mile to what is called their "headquarters camp," and from this camp the road extends farther about one and three quarters of a mile to the principal scene of their logging operations where their actual operators seem to reside while in the service of the company.
The husband of this plaintiff, at the time of the accident in question and for a long time prior thereto, had been employed as a laborer of the logging camp of the Inman-Poulsen Lumber Company and the plaintiff, his wife, was employed there for about six months up to about three weeks before the accident occurred, when she ceased to be employed and was engaged in preparations for housekeeping in a shack where she and her husband proposed to reside, he continuing in the employ of the company.
The tracks of the two companies, O.A.L. Company and the Inman-Poulsen Lumber Company, seem to have been used jointly by them in their logging operations, each one having the right to use the *Page 339 
track of the other, but in a way not to interfere with each other's operations. There is no proof of any formal contract between them to this effect, but the evidence abundantly shows that each party assumed to have a right to use the tracks of the other in their necessary operations; that each party exercised the right to use, in addition to logging trains, railway speeders to and from the station at Keasey through the whole extension of the two railway systems, and that the title to the railroad from the camp of the O.A.L. Company to Keasey was in the O.A.L. Company and the title to the extension of the railroad and other camps of the Inman-Poulsen Lumber Company was in that company. It appears from the uncontradicted testimony that there was no other way for employees or other persons visiting in the O.A.L. Company's camp or the Inman-Poulsen Company's camp to get to them or away from them except by riding upon logging trains or speeders along the respective tracks. There is abundant evidence that it was a common practice of both companies to use these speeders and to carry, without charge, persons desiring to visit either of said camps, or to depart therefrom. To avoid the interference of such speeders with each other, or with the logging trains upon the railroad, it seems to have been customary for the person operating the speeder to stop at the camps of the O.A.L. Company and get a clearance from the operator there who was in the employ of the O.A.L. Company before proceeding on the journey to Keasey. In this way a speeder proceeding from the O.A.L. Company's camp could have reasonable assurance that it would not meet with any train or speeder coming from the opposite direction. On the day of the accident the plaintiff *Page 340 
desired to go to Portland to visit and take care of her mother, who was sick, and boarded a speeder of the Inman-Poulsen Company for that purpose. Whether she boarded the speeder by permission, or by invitation, or was simply taken as a passenger by reason of what appears to have almost if not entirely been a custom of the companies, does not appear. She boarded the speeder of the Inman-Poulsen Company which had attached to it a trailer containing several employees of the said company, and it proceeded to the camp of the O.A.L. Company where the person in charge of that camp gave them a clearance with the information that an O.A.L. Company's speeder was also proceeding to Keasey and was about fifteen minutes ahead of them. The O.A.L. Company's speeder was in charge of the defendant Davidson, who was going to Keasey on business for the company, one of the particulars of which was to pick up some six-foot iron rails for the purpose of putting them together or using them at Keasey as a turntable for the machine which he was in charge of. What other business he had there, if any, does not appear.
The turntable material was located about halfway between the O.A.L. Company's camp and Keasey, and at a point about six or seven hundred feet above the scene of the accident. On his way down Davidson had passed the place where the turntable material was lying and becoming aware of this fact he started to back up the grade toward the O.A.L. Company's camp, and while so doing sighted the Inman-Poulsen Lumber Company's speeder on which plaintiff was riding and stopped his car, the Inman-Poulsen Company's driver doing likewise, the interval between the two cars being *Page 341 
variously estimated at from 30 to 50 feet. At this time there was on the Inman-Poulsen Lumber Company's car the plaintiff and her daughter, a man by the name of Gillies, another man by the name of Peterson, and the driver, and in the trailer attached to it were several other persons to the number of seven or eight. Davidson got out of his car and told the defendant Domnisse to watch it, went back to the Inman-Poulsen Lumber Company's car and explained to a man by the name of Winkler, who was in charge of that car, that he had passed the rails he was looking for and requested Winkler to back the speeder up and assist him in finding them, and bring them down to his own car. Winkler complied with this direction and the Inman-Poulsen speeder went back upon this errand several hundred feet, picked up the rails, laid them on the front part of the speeder and started on its return toward Keasey at a speed variously stated at from six to ten miles. In the meantime, defendant Domnisse, who appears to have known little or nothing about the management of the speeder, started up his car, and at a point probably 150 or 200 feet from where it had made a stop he met the Inman-Poulsen speeder and the collision occurred. Domnisse testified that Davidson gave him a signal which he interpreted as a signal to come ahead with his car and that he did so, meeting the other car unexpectedly, he put on his brakes and stopped his car and that the Inman-Poulsen car collided with him and in this way he accounted for the collision. The testimony for the plaintiff is to the effect that when Winkler, the operator of Inman-Poulsen Lumber Company's car, saw the other car approaching at a rather rapid rate of speed he put on his brakes and came almost *Page 342 
to a stop before the collision occurred. Plaintiff testified that Davidson had gotten in the Inman-Poulsen speeder and was sitting by her side and called out to her to jump, and that she jumped from the car, breaking her ankle and receiving a very serious, if not a permanent injury. One of the main questions in the case is, Who, if anyone, was the negligent cause of the collision? The plaintiff's main contention is, of course, that Davidson, being in charge of the O.A.L. Company's speeder, was bound to operate it with at least reasonable regard for the safety of the occupants of the other car and that such reasonable operation would preclude his driving the car or causing it to be driven up the road where the Inman-Poulsen Lumber Company's car would likely to be on its way down toward Keasey. The plaintiff contends that Davidson gave the signal to Domnisse to bring the car along and in so doing acted negligently both in respect to causing the car to be driven at all and in causing it to be driven by an unskilled and ignorant driver. Davidson stoutly denies that he ever gave such an order or requested Domnisse to bring the car up the road, or to do anything with it except he states that when he went up to the Inman-Poulsen speeder to discuss picking up the rails, he told Domnisse to watch the car. The testimony in this respect is conflicting and if the writer had been on the jury he would have hesitated in accepting Domnisse's statement that Davidson signaled to him to proceed.
It was merely a question of fact for the jury and there is some evidence to justify plaintiff's contention. Under the Constitution, we have no authority to pass upon the weight of the evidence, so, for the purpose of this case, we must assume *Page 343 
that the order was actually given and it was really not an unnatural order under the circumstances had Davidson left the speeder in charge of a competent man instead of one who seems to have been an ignoramus so far as knowledge of its operation was concerned. The situation was that the rails which Davidson desired to carry down to Keasey were beyond the point where the Inman-Poulsen speeder stopped and it would have been impossible to have gone past the Inman-Poulsen speeder in order to find the rails and put them upon the speeder controlled by Davidson, so it would seem the natural thing that the Inman-Poulsen speeder should be backed up to or beyond the place where the rails were in order that the O.A.L. Company's speeder could take them on board and it was natural, being ignorant of the exact place where the rails were, that Davidson should desire to be a little ahead in order to find them, and it would not be unusual for him to have wished to have his own speeder near the place where they were picked up, but this is merely speculation. So, we have here this undoubted and unquestionable state of affairs: The Inman-Poulsen speeder was moving down the track toward Keasey and the O.A.L. speeder was moving up the track toward the O.A.L. Company's camp and under these circumstances they collided. It is evident that the collision could not have occurred unless somebody was negligent. There was a serious blunder somewhere which resulted in an injury to the plaintiff. Now, whose blunder was it? Looking at the matter through the medium of the testimony, there is much to justify the idea that it was a case of joint negligence on the part of both parties, but, in that event, it would be no justification to the defendant company *Page 344 
here to demonstrate that fact that the Inman-Poulsen Lumber Company was also negligent.
The plaintiff could elect to sue one of two or more joint wrongdoers if she saw fit. In fact, in this case there seems to be a general disposition among all the defendants as between Davidson and the O.A.L. Company to pass the responsibility on to somebody else rather than to show there was no negligence on the part of anybody. If we assume, as we must, under the verdict of the jury, that Davidson directed or requested Domnisse to follow him with the O.A.L. Company's speeder, which the jury had a right to find, it was a negligent act under the circumstances, and he was as much responsible as though he had been actually in control of the speeder himself. If anyone is legally responsible for plaintiff's injury, it is the company who placed Davidson in charge of the speeder with authority to operate it on their business on that road.
There is a contention that the Inman-Poulsen Lumber Company was only operating their speeder on the end of the road between the O.A.L. Company's camp and Keasey by sufferance and they themselves were licensees, but the testimony taken altogether indicates that both companies were engaged in the same class of business; that the necessity for both of them to use each other's tracks existed as to both, and that whatever agreement they may have had between themselves, they were to be treated as joint users of the tracks. The O.A.L. Company was not a trespasser or a bare licensee when it chose to use the portion of the track constructed by the Inman-Poulsen Lumber Company, nor was the Inman-Poulsen Lumber Company a bare licensee when it used the track of the O.A.L. Company *Page 345 
in the course of its business, and in the situation in which the companies were placed, with no other ingress or egress to or from their respective camps except by the railroad track, the speeders constituted a necessary part of their equipment and a necessary adjunct to carrying on their business. They were at a remote place in the forest and neither would be able to keep or secure workmen or conveniently obtain provisions, or transact the incidental part of their business with the outside world, which was necessary to carry it on, without the use of the speeders or something of that character. They were used to bring their employees into their camps and to get them out, and bring them into their camps for the purpose of carrying on their business, necessarily correlated a corresponding obligation to take them out again on necessary occasions. They owed this as a moral if not a legal duty. The plaintiff went into the Inman-Poulsen Company's camp as an employee and labored there for several months and it was not expected, nor could it be reasonably anticipated that when her work ceased, she should walk seven or eight miles through the howling wilderness to get a passenger railroad which would carry her to civilization. She was not a bare licensee and when having gone into the camp on the business of the company she worked for, she was entitled to consideration in the manner of getting out. The testimony does not indicate that anybody so situated was ever refused transportation, or that they were in the habit of asking it as a favor, but rather that it was granted as a matter of course just as the same consideration was shown to people coming in to sell provisions and supplies to the companies. It is true that the railroad was not strictly a passenger *Page 346 
road in that it had no schedule or fees for the transportation of passengers, and was not permitted to carry passengers for hire thereby avoiding the supervision of the Public Utilities Commission; but, the fact that they charged no fare did not in any way lessen their responsibilities any more than it lessens the responsibility of a common carrier railroad to a passenger, who is traveling on a free pass, and the very fact that a common carrier carries a person free does not on that account lessen their liability for injuries sustained by reason of negligence.
Under all the facts in this case, we hold that both of these companies owed the plaintiff the duty of taking reasonable care that she should not be injured by their negligence while traveling over the tracks jointly used by them, and that there is evidence sufficient to go to the jury that both companies were negligent in that respect. The evidence shows that Davidson was in charge of the O.A.L. Company's speeder in the transaction of the company's business as an agent of the company, and for all the purposes connected with the use in the management of the speeder on this road he was the company; that for like purposes Winkler, who was put in charge by the Inman-Poulsen Lumber Company as an operator of their speeder, was also the company, and for the joint and several negligence both of their respective companies were liable.
The question is raised as to the effect of the verdict of the jury in respect to Domnisse upon the verdict in this case. The verdict is rather peculiar. The jury found in favor of the plaintiff and against the O.A.L. Company and Davidson, but as to Domnisse they returned a verdict in the following words: *Page 347 
"We the jury, duly impanelled to try the above entitled cause, find our verdict for the defendant S.J. Domnisse. Not Guilty.
"WILLIAM E. NEWMAN, Foreman."
It is contended that by finding Domnisee "not guilty" the jury found that he did not operate the car recklessly or unskilfully and that he did not know that it would collide with the speeder of the Inman-Poulsen Company. Technically considered, perhaps the jury may have found all these things, but Lord only knows what they intended by their verdict of "not guilty" as to Domnisse, but the verdict for him would not necessarily preclude the charges of negligence against the O.A.L. Company and Davidson.
The gist of the charge against Domnisse was that he operated his speeder at a too high rate of speed and also operated it in the direction of the Inman-Poulsen Lumber Company's speeder. There is no evidence that Domnisse knew what was going to be done with the Inman-Poulsen speeder or when it was likely to return. The evidence shows that Davidson did know where it was going and what was to be done and how soon it was to return. Domnisse might possibly not be negligent in the respects charged and still Davidson, and through him the company he represented, be guilty of the negligence charged against him and his company. It must be confessed that the proposition is a very close one, but courts are disposed to be rather tender and considerate of the inexperience and idiosyncrasies of jurors and not to seek mere technical reasons for setting aside their verdict.
It is to be regretted that the pressure of business of this court precludes a discussion in detail of the various points urged by defendants' counsel. We *Page 348 
have, however, given them serious consideration, although, for the reasons mentioned, we have not discussed them editorially in the opinion.
The judgment of the Circuit Court is affirmed.
AFFIRMED.
RAND, C.J., and COSHOW and ROSSMAN, JJ., concur.